**Deanna BRAUN, Plaintiff,**

v.

**OHIO BELL TELEPHONE COMPANY, Defendant.**

**No. C–3–87–239.**

United States District Court, S.D. Ohio, W.D.

Oct. 21, 1988.

Konrad Kuczak, Dayton, Ohio, for plaintiff.

Thomas A. Linton, Ohio Bell Telephone Co., Cleveland, Ohio, Howard P. Krisher, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S REVISED MOTION FOR SUMMARY JUDGMENT (DOC. # 40); JUDGMENT TO BE ENTERED FOR DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

This case is before the Court on the Revised Motion for Summary Judgment of the Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. # 40). Defendant has moved for summary

judgment, pursuant to Fed.R.Civ.P. 56, on three grounds:

1) As a matter of law, the Plaintiff was not entitled to benefits under the relevant benefit plans at any relevant time;

2) The Plaintiff failed to exhaust her administrative remedies provided for in the relevant benefit plans; and

3) The Plaintiff's claim is barred by the doctrine of *res judicata* due to a prior administrative determination that she was discharged for just cause in connection with her work performance.

For the reasons briefly set forth below, Defendant's Motion for Summary Judgment is granted.

On a Rule 56 Summary Judgment motion, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). In ruling on a motion for summary judgment, the trial judge's function is not to weigh the evidence and to determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510. In essence, the inquiry is whether the evidence presents a sufficient disagreement, a sufficient conflict, to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 249–50, 106 S.Ct. at 2510–11.

Initially, the party seeking summary judgment bears the burden of informing the district court of its basis for its motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This accomplished, the burden then shifts to the non-

moving party to designate specific facts showing that there is a genuine issue for trial. *Id.* at 323, 106 S.Ct. at 2552–53. The plain language of Rule 56(a) mandates the entry of summary judgment against a non-moving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. With this standard in mind, this Court now considers the reasons urged in support of the Defendant's motion. We address the last ground first.

1. The Defendant's contentions that the Plaintiff's claim is barred by the doctrine of *res judicata* due to a prior administrative determination that she was discharged for just cause in connection with her work performance.[1]

█ It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1985). Likewise, when a state administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the doctrine of collateral estoppel has been applied to prevent the relitigation of the same issues between the same parties or their privies in a subsequent civil action in federal court. *United States v. Utah Construction Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971). For purposes of this case, there is persuasive au-

---

1. The interrelated doctrines of *res judicata* and collateral estoppel are occasionally confused. Under the former doctrine, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the latter doctrine, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of *issues* actually litigated and necessary to the outcome of the first

action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1979); *Harrison v. Bloomfield Building Industries, Inc.*, 435 F.2d 1192, 1195 (6th Cir.1970). The instant case is one of "issue preclusion," and thus is more properly characterized as collateral estoppel. Hence, the Defendant's third ground for summary judgment will be treated accordingly.

thority from Ohio appellate courts that a prior determination by the Ohio Unemployment Compensation Board of Review ("OUCBR") that an employee was dismissed for "just cause", has collateral estoppel effect in a subsequent civil action, when the issues to be tried in the latter are identical to the issues that were resolved by the OUCBR. *Pullar v. Upjohn Health Care Services, Inc.,* 21 Ohio App.3d 288, 291–292, 488 N.E.2d 486 (1984); *Distelzweig v. Hawks Hospital of Mount Carmel,* 34 Ohio App.3d 277, 278, 518 N.E.2d 43 (1986).[2] The Supreme Court of Ohio, however, has not ruled dispositively on this issue.[3]

Our initial inquiry on this contention of the Defendant involves two questions: one, whether the OUCBR was acting in its judicial capacity when it determined the plaintiff was dismissed for just cause; and secondly, whether the defendant has made a sufficient showing of identity of issues to overcome the plaintiff's claim that she is not collaterally estopped to bring this civil action.

■ At the outset, it is clear that the OUCBR proceeding was judicial in nature and thus the plaintiff had a full and fair opportunity to litigate whether her dismissal was for just cause.[4] As to the second inquiry, however, the identity of issues is *not* so complete as to preclude the plaintiff's cause of action under the doctrine of collateral estoppel.

In her Complaint, Plaintiff claims that Defendant's actions in dismissing her on January 10, 1985, deprived her of her "*right* to sickness and accident disability benefits and long term disability benefits," from that time forward. (Emphasis added) (Doc. #1, ¶14). Subsequently, Defendant filed a Revised Motion for Summary Judg-

**2.** Defendant correctly points out in its Reply Brief in Support of its Motion for Summary Judgment that the *Distelzweig* decision should not be read as a wholesale rejection of giving collateral estoppel effect to Unemployment Compensation Board decisions. On the contrary, as noted above, in Ohio courts which have considered the issue, the rule laid down is that the doctrine of collateral estoppel precludes relitigation in a subsequent civil action of an identical issue or isues which have been actually and necessarily resolved by the Unemployment Compensation Board.

**3.** Note, however, that while it is difficult to predict how the Sixth Circuit will treat a prior determination by an Ohio administrative body, namely the OUCBR finding that a certain employee was dismissed for just cause, the Sixth Circuit has addressed this collateral estoppel issue in the context of Michigan law.

In *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190 (6th Cir.1986), the Sixth Circuit had the opportunity to review a "subsequent civil action" in which plaintiff asserted she was fired without "just cause" in violation of an implied employment agreement with the defendant. Plaintiff previously filed for unemployment benefits with the Michigan Employment Security Commission ("MESC"). Her complaint was rejected by MESC on the finding that her dismissal was for just cause. In a subsequent civil action in the federal district court, the plaintiff won a jury verdict claiming her dismissal was for other than just cause. The defendant appealed to the Sixth Circuit, which reversed on grounds that the court was collaterally estopped to review whether plaintiff's dismissal was for other than just cause. As with the Ohio Supreme Court, the Michigan Supreme Court had not ruled on whether a previous decision by an unemployment board that an employee was dismissed for just cause could preclude the same employee from subsequently claiming in a Michigan court that she was discharged for some other reason, i.e., without just cause. However, the Sixth Circuit viewed that a Michigan Supreme Court decision applying collateral estoppel effect to a previous determination by the *Michigan Employment Relations Board* could be applied to likewise collaterally estop, on the basis of the MESC determination of just cause dismissal, a subsequent suit in federal court by Polk claiming she was discharged without just cause.

If not dispositive, *Polk* sheds some insight on how the Sixth Circuit is likely to treat the absence of an Ohio Supreme Court decision on point with respect to whether a claimant is collaterally estopped from filing a claim in federal court that she was discharged "without cause", when there is a previous determination by the OUCBR to the effect that her dismissal was for just cause. In short, the Sixth Circuit is likely to find by analogy to other Ohio administrative body decisions that collateral estoppel would apply to a decision by the OUCBR that Plaintiff was dismissed from her job with cause, especially where the parties have had a previous opportunity to fully litigate this issue.

**4.** At the hearing before the Unemployment Compensation Board, the Plaintiff had the right to counsel, the right to present and cross examine witnesses and the right to present evidence in support of her case.

ment on the grounds stated above (Doc. #40). In the Plaintiff's reply to the Defendant's *Revised Motion for Summary Judgment*, she raises for the first time the contention that the five day suspension beginning January 5, 1985, was designed by the Defendant to prevent the Plaintiff from making a claim for disability benefits (Doc. #47).

This latest claim essentially asks the Court to reconsider what was already determined by the OUCBR, namely, whether the reason for the Plaintiff's dismissal was for "just cause" or as Plaintiff claims for some other reason, i.e., to deprive her of her disability benefits. Since we find that the same questions of fact are posed by the Plaintiff's assertion that she was fired to prevent her from receiving disability benefits as were determined by the OUCBR when it concluded that Plaintiff was discharged for misconduct, the doctrine of collateral estoppel prevents Plaintiff from relitigating this issue. While the Sixth Circuit has stated that the doctrine of collateral estoppel should not be rigidly applied and should be soundly rejected or qualified when its application would contravene an overriding public policy or result in manifest injustice, *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir.1971), this Court perceives no contravening of public policy or manifest injustice in applying the doctrine of collateral estoppel to *this* issue.

■ However, Plaintiff's claim that she was *entitled* to sickness disability and long-term disability benefits during her prior absence from work and that Ohio Bell interfered with those rights does not involve facts or issues that were properly before OUCBR and that were necessarily determined by its decision. The OUCBR is not empowered to determine whether Plaintiff was entitled to any disability benefits or whether Ohio Bell interfered with those rights, nor would OUCBR be able to provide Plaintiff with any remedy if she could prove that she was so entitled. Since Plaintiff did not have a reason or an opportunity to fully litigate these issues in the administrative process and since manifest injustice would otherwise result, she is not precluded from raising them in this subsequent litigation.

2. The Defendant's contention that, as a matter of law, the Plaintiff was not entitled to benefits under the relevant benefit plans at any relevant time.

Having concluded the Plaintiff may raise the above issues in a subsequent civil action, the Defendant nonetheless argues that the Plaintiff was not entitled to benefits under either of the relevant benefit plans at any relevant time. An employee of Ohio Bell becomes eligible for sickness disability benefits if she has completed at least six months of net credited service for the company and is absent from work for seven calendar days due to sickness or off-the-job injury. The "benefits period" begins on the eighth day and runs for fifty-two weeks. If the disability continues for longer than fifty-two weeks, the disabled employee then becomes eligible for long-term disability benefits. (*See* Document #40, Appendix #1, Exhibit A, pp. 3–4 and Exhibit B, p. 3). In addition to the requirement that the Plaintiff must be absent for seven calendar days, the employee must furnish satisfactory certification of disability from a physician who is providing care for the employee. (Doc. #40, Appendix 1, Exhibit A, p. 4).

In the case at bar, at no time after the Plaintiff returned to work in May of 1984, following a certified disability, was she absent for seven calendar days due to a disabling sickness. On the contrary, both Dr. Wagnitz and Dr. Greenfield certified the Plaintiff's disability had terminated and that she was fully able to return to work after May, 1984. Thus, Plaintiff's claim that she was eligible as of January, 1985 (when she was discharged), for sickness disability benefits and long-term disability, is without foundation.

Likewise groundless is the Plaintiff's contention that the five-day suspension imposed by the Defendant, Ohio Bell, was a subterfuge to prevent the Plaintiff from claiming those benefits. As discussed

above, to the extent that the OUCBR determined that the Plaintiff was dismissed for just cause, the Plaintiff is barred under the doctrine of collateral estoppel from asserting that the reason for her dismissal at Ohio Bell was otherwise. But, even assuming the Plaintiff could make this argument and further assuming the facts in a light most favorable to the Plaintiff, *i.e.,* "but for" the dismissal of the Plaintiff on January 10, 1985 (five days after she was suspended on January 5, 1985), she would have met the seven-day absence requirement under the sickness disability benefit plan, the Plaintiff still fails to raise any genuine issue as to whether she was entitled to any relevant benefits at any relevant time because she was not absent from work due to a disabling sickness, but rather was suspended due to what the OUCBR determined to be misconduct. Therefore, reasonable minds could not find that the Plaintiff was entitled to sickness and accident disability benefits or long-term disability benefits at any relevant time. As a matter of law, the Plaintiff simply failed to meet the requirements under the relevant benefits plans and is not entitled to judgment.

Finally, having resolved that as a matter of law, the Plaintiff was not eligible under either of the relevant benefit plans for any benefits, the Defendant's argument that Plaintiff failed to exhaust administrative remedies is moot.

WHEREFORE, based upon the aforesaid, Defendant's Motion for Summary Judgment is granted.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.