SOLOWITCH ET AL., APPELLANTS, *v.*
BENNETT, APPELLEE.

(No. 44725—Decided December 16, 1982.)

*Mr. Eric S. Solowitch* and *Ms. Ruth F. Solowitch, pro se.*

*Mr. William J. Brown,* attorney general, *Ms. Susan C. Hayest* and *Mr. David Harbarger,* for appellee.

PRYATEL, C.J. Plaintiffs-appellants, Eric S. and Ruth F. Solowitch, instituted this suit against defendant-appellee, Robert T. Bennett, Deputy Registrar of the Ohio Bureau of Motor Vehicles, on February 20, 1981. The complaint alleged that defendant's negligence in issuing an operator's license to Elizabeth C. Beatty when she was nearly eighty years of age without requiring her to undergo a driver's examination was the proximate cause of a head-on collision in which plaintiff Eric was injured when struck by an automobile driven by Beatty. Plaintiff Eric sought $50,000 compensatory and $50,000 punitive damages, and plaintiff Ruth, $10,000 for loss of consortium.

Defendant answered, admitting that he had issued an operator's license to Beatty, but denying all other allegations. Defendant then moved to dismiss the complaint, contending that the court of common pleas lacked jurisdiction over the suit on the grounds that the Court of Claims had exclusive jurisdiction over these claims as they are, in effect, claims against the state.

Plaintiffs opposed this motion, contending that a deputy registrar is an independent contractor rather than an employee or officer of the state and that, in any case, a deputy registrar is not synonymous with the state.

Plaintiffs also moved for leave to file an amended complaint, in which they would allege (1) that defendant acted outside the scope of his employment in waiving examination of Beatty prior to renewing her license; and (2) that defendant acted "in a wanton and reckless manner."

The court, without acting upon the motion for leave to amend plaintiffs' complaint, granted defendant's motion to dismiss on November 23, 1981.

From that adverse judgment, appellants now take this appeal, citing two assignments of error.

Assignment of Error No. I

"I. The trial court erred and abused its discretion in not granting plaintiff-

appellant's [sic] motion for leave to file amended complaint."

Appellants maintain that since leave to amend a complaint "shall be freely given when justice so requires" (Civ. R. 15[A]), the court erred in not ruling upon their motion by which they would have been able to state a claim not subject to dismissal for lack of jurisdiction.

Appellants rely on *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161 [63 O.O.2d 262], which holds that leave to amend should be freely given where an amended complaint will set forth a claim upon which relief can be granted.

Civ. R. 15(A) provides:

"Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * *"

As the rule states, once an answer to a complaint is served (as in the instant case), a party may amend his complaint only with leave of court, which grant of leave is discretionary. Thus, a motion for leave to amend a complaint is commended to the court's sound discretion, subject to review on appeal. *State, ex rel. Wargo*, v. *Price* (1978), 56 Ohio St. 2d 65, 66 [10 O.O.3d 116]. Its denial will not be disturbed on appeal without an affirmative showing of an abuse of discretion. *Dept. of Taxation* v. *Cemetery Management Service Co.* (1981), 2 Ohio App. 3d 115, at 117; *Crawford* v. *Bohannon* (1959), 110 Ohio App. 71 [12 O.O.2d 248]. See, also,

*Cebulek* v. *Tisone* (App. 1938), 28 Ohio Law Abs. 166, and *Colarik* v. *Young* (App. 1962), 91 Ohio Law Abs. 227 [26 O.O.2d 363].

Since this rule is to be liberally construed in favor of the movant in order to save his cause of action as the court noted in *Peterson, supra,* the grant of leave to amend should not be withheld without "good reason":

"Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion. We observe no good reason why leave should have been denied in this case, and therefore hold that the overruling of the motion for leave to amend constituted prejudicial error." *Id.* at 175.

In *Peterson*, we note that the original complaint was statutorily barred for failure to plead the date of the discovery of the fraudulent misrepresentation, which omission the amended complaint sought to rectify.

In the instant case, unlike in *Peterson, supra,* appellants were not seeking to remedy an apparent oversight or omission in the original complaint, but instead to set forth a cause of action for which appellee would be unable to invoke the protection of R.C. 9.86 (governing the defense of immunity of public employees from civil liability). Hence, the language of the amended complaint alleging that appellee was acting outside the scope of his employment, and in a "wanton and reckless manner," conforms to the wording of the exception to official immunity in R.C. 9.86.[1]

---

[1] "Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, *unless the officer's or employee's actions were manifestly outside the scope of his*

Expanding upon the requirement (noted in *Peterson, supra*) that leave to amend be sought in "good faith," the court in *Billy Baxter Inc.* v. *Coca-Cola Co.* (S.D.N.Y. 1969), 47 F.R.D. 345, affirmed (C.A. 2, 1970), 431 F. 2d 183, certiorari denied (1971), 401 U.S. 923, held that there must be at least a *prima facie* showing that the movant can marshal support for the new matters sought to be pleaded, and that the amendment is not simply a delaying tactic, nor one which would cause prejudice to the defendant.

In our case, we note that appellants presented no operative facts in support of their new allegations that appellee's conduct in renewing an operator's license without prior examination was either "wanton" or "reckless" or "manifestly outside the scope of his * * * official responsibilities."

In the absence of a showing of good faith on appellants' part in seeking leave to amend their complaint, we hold that the trial court did not abuse its discretion in failing to act upon appellants' motion to amend before granting appellee's motion to dismiss, there being no disclosed basis to support their new allegations. Furthermore, if leave had been granted, prejudice to appellee would have resulted.

Assignment of Error No. I is hereby overruled.

Assignment of Error No. II

"II. The trial court erred in granting defendant-appellee's motion to dismiss for lack of jurisdiction of the trial court when the jurisdiction of the trial court had been properly alleged."

Appellants argue that the court erred in dismissing their complaint against "Robert T. Bennett, Deputy Registrar" since in effect this was not a suit against the state, and since, moreover, a deputy registrar is an independent contractor, not a public official or employee.[2]

The Registrar of Motor Vehicles is empowered to appoint such deputies as he requires to carry forth his duties in R.C. 4501.02, which provides, in part:

"The registrar shall administer the laws of the state relative to the registration of and certificates of title for motor vehicles and the licensing of motor vehicle dealers, distributors, and salesmen. He may, with the approval of the director of highway safety, adopt and promulgate such forms * * * as are necessary to carry out all laws he is required to administer. *He may, with the approval of the director, appoint such number of assistants, deputies, clerks, stenographers, and other employees as are necessary to carry out such laws.*"[3] (Emphasis added.)

The duties of the deputy registrar are also prescribed by statute, notably in R.C. 4503.03[4] and 4507.01,[5] as is the method of

---

*employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. * * *"* (Emphasis added.)

[2] We will not treat appellants' additional argument that appellee was acting outside the scope of his employment, since the allegation appears only in the amended complaint, not in the original complaint dismissed by the trial court.

[3] The citations to R.C. Title 45 throughout this discussion are to those statutes in effect in December 1979, when the appellee (as deputy registrar) issued the license pertinent to this action.

[4] R.C. 4503.03 provides in part:

"The registrar of motor vehicles may designate the county auditor in each county a deputy registrar and shall contract with one or more other persons in each county to act as deputy registrars. Deputy registrars shall accept applications for the annual license tax and assign distinctive numbers in the same manner as the registrar. * * *

"With the approval of the director of highway safety, the registrar shall adopt rules governing the terms of the contract between the registrar and each deputy registrar. The rules shall include requirements relating to the amount of bond to be given as provided in this

compensation of a deputy registrar for his services.[6] Because the registrar contracts for the services of a deputy registrar, appellants have argued that a deputy registrar is an independent contractor instead of a state employee. This conclusion is contrary to the opinion of the Attorney General to the effect that:

"Deputy registrars have long been recognized to be state officers who are authorized to exercise some of the sovereign powers which have been committed by statute, to the Registrar." 1975 Ohio Atty. Gen. Ops. No. 75-023, at 2-92.

The Attorney General based his opinion in part on statutory authority and in part on the criteria for determining whether a position is a public office as set forth in *State, ex rel. Landis,* v. *Bd. of Commrs.* (1917), 95 Ohio St. 157, at 159:

"The chief and most decisive characteristic of a public office is determined by the quality of the duties with which the appointee is invested, and by the fact that such duties are conferred upon the appointee by law. If official duties are prescribed by statute, and their performance involves the exercise of continuing independent, political or governmental functions, then the position is a public office * * *."

Applying the above criteria, we find that the duties of a deputy registrar are circumscribed by statute under the supervision of the registrar, with whom he contracts to provide these statutorily defined services. Accordingly, we hold, consistent with the opinions of the Attorney General on this question since 1923,[7] that a deputy registrar is a state officer or employee.

Turning to the case *sub judice,* we observe that this action seeks to recover damages from the appellee individually and personally for the negligent performance of certain duties (issuing a license without examination to a woman nearly

---

section, the size and location of the deputy's office, minimum staffing for the office, and procedures relating to the safekeeping and return of motor vehicle certificates of title or memorandum certificates submitted with an application for renewal of a registration as provided in section 4503.102 of the Revised Code. The rules shall also include requirements for the hours the deputy's office is to be open to the public * * *. The rules may include such other requirements as the registrar and director consider necessary to provide a high level of service. Unless otherwise terminated, contracts with deputy registrars shall expire on the thirtieth day of June each year. * * *

"The registrar shall assign to each deputy a series of numbers sufficient to supply the demand at all times in such community, and the registrar shall keep a record in his office of the numbers within the series assigned. Each deputy shall .be required to give bond in the amount of at least twenty-five thousand dollars, or in such higher amount as the registrar determines necessary, based on a uniform schedule of bond amounts established by the registrar and determined by the volume of registrations handled by the deputy. * * *

"The deputies shall keep a file of each ap-

plication and shall register such motor vehicle with the name and address of the owner thereof."

[5] R.C. 4507.01 provides in part:

"* * * The registrar shall also assign one or more deputy registrars to any driver's license examining station * * * having given twenty thousand or more examinations the preceding calendar year, and may assign one or more deputy registrars to any other driver's license examining station operated by the state highway patrol.

"* * * No deputy registrar shall in any manner solicit any form of automobile insurance, * * * nor in any manner advise, suggest, or influence any licensee or applicant for license for or against any kind or type of automobile insurance, * * * nor impart any information furnished by any applicant for a license * * * to any person, except the registrar. The registrar shall immediately remove a deputy registrar who violates the requirements of this chapter."

[6] See R.C. 4507.24.

[7] See 1923 Ohio Atty. Gen. Ops. No. 865.

eighty years of age). However, under R.C. 4507.09, an unexpired driver's license "shall be renewable within thirty days prior to its expiration upon payment of the fees as required by law." This provision for renewal sets forth no examination requirement. The only statutory authority for conducting any examination of an applicant for renewal of a driver's license falls within the purview of the duties of the Registrar of Motor Vehicles,[8] which official also has the discretion to "waive the examination of any person" who presents an unexpired license. R.C. 4507.10.[9] Moreover, while the deputy registrar acts on behalf of the registrar under R.C. 4507.01, a deputy registrar shall not exercise the powers of the registrar unless "specifically authorized" to do so by statute (which authority is not conferred by R.C. 4507.10 governing examinations). Since a deputy registrar has no such authority to give an examination to an applicant for time renewal of a license, appellee had no duty in this respect, the breach of which could constitute "negligent performance," as alleged in the complaint. Thus, the complaint fails to state a cause of action, and is properly subject to dismissal.

Consequently, we hold that the trial court did not abuse its discretion in dismissing appellants' complaint.

Assignment of Error No. II is hereby overruled.

We affirm.

*Judgment affirmed.*

PATTON and DAY, JJ., concur.

---

[8] See R.C. 4507.11.

[9] Appellants even admit in their own brief that "a deputy registrar is not specifically authorized by corresponding statutes to administer examinations for operators [sic] licenses. * * *"